UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

STEPHANIE HOGREFE, INDIVIDUALLY AND AS NATURAL GUARDIANS FOR THEIR MINOR CHILD KH (A MINOR CHILD); AND PAUL HOGREFE, INDIVIDUALLY AND AS NATURAL GUARDIANS FOR THEIR MINOR CHILD KH (A MINOR CHILD);

Plaintiffs,

v. Case No.: 6:25-cv-02133-ACC-NWH

STEPHANIE PENA, IN HER INDIVIDUAL CAPACITY AS CHILD PROTECTIVE INVESTIGATOR; AMY HANKS, IN HER INDIVIDUAL CAPACITY AS CHILD PROTECTIVE INVESTIGATOR,

Defendants,
___________________________________/

**ORDER**

This cause comes before the Court on Defendants Amy Hanks ("Hanks") and Stephanie Pena's ("Pena") Motion to Dismiss Plaintiffs K.H.[1], Stephanie Hogrefe

---

[1] It appears that Plaintiffs' case style omitted K.H. as a plaintiff and that Plaintiffs failed to follow the subsequent administrative steps required to add a party as a plaintiff. However, it is obvious from the Second Amended Complaint that K.H. is also a Plaintiff. The Court will direct the clerk to add K.H. as a plaintiff.

("Stephanie Hogrefe"), and Paul Hogrefe's ("Paul Hogrefe") (collectively, "Plaintiffs") Second Amended Complaint (Doc. 72) (the "Complaint"), to which Plaintiffs responded in opposition (Doc. 73). For the reasons that follow, the Motion will be denied.

## BACKGROUND

This case arises from the tragic loss of Paul Hogrefe and Stephanie Hogrefe's (collectively, the "Parents") infant baby girl who died following months of undiagnosed medical issues that prompted, according to the Plaintiffs, unsubstantiated child abuse allegations. Specifically, Plaintiffs allege that untrue child abuse and murder accusations as to their now deceased daughter had a domino effect that ultimately resulted in Pena's and Hanks' wrongful pursuit to terminate the Parents' parental rights as to their only remaining child, their toddler son K.H. This case is about K.H. and whether the dependency proceedings following his sister's death are actionable under 42 U.S.C. § 1983.

In 2021, the Parents allege that their newborn daughter suffered from several medical conditions—some were undiagnosed at the time, while others, they allege, were documented by their daughter E.H.'s primary physicians. (Doc. 69 ¶¶ 37–39, 48, 50–52). During this difficult time, emergency room doctors and other providers caring for E.H. concluded, based on physical examination, that at least some of the infant's presenting symptoms were consistent with or caused by abuse. (*Id.* ¶¶ 30,

50). Despite the Parents' alternative explanations for E.H.'s injuries, including that E.H. was having suffocation and vomiting episodes prompting CPR intervention from the Parents, the hospital referred the case to the Florida Department of Children and Families ("DCF"), which triggered various agencies' involvement in an investigation. (*Id.* ¶¶ 42–56). The Parents allege that E.H. had an illness and/or birth-related medical conditions that were misattributed as abuse by medical providers at the time. (*Id.* ¶¶ 30, 50).

The Parents' daughter was admitted to the hospital several times. (*Id.* ¶¶ 48, 84). Following an initial hospital admission, investigators from DCF sought to have the older child, K.H., removed from the home through a temporary safety plan, and thereafter, commenced court proceedings and began investigating the abuse claims. (*Id.* ¶¶ 57–74). During the course of the initial safety plan, E.H. passed away. (*Id.* ¶ 94). After having previously dismissed other DCF and related agency defendants from this lawsuit, at issue now are two DCF investigators, Defendants Pena and Hanks sued in their individual capacity, and allegations that they fabricated evidence and omitted material information as part of their case relating to K.H.'s custody. The Court will address the factual circumstances as to each Defendant as they are alleged in the Complaint.

### I. Defendants Hanks and Pena file petitions and remove K.H.

Upon the referral to DCF, Hanks, other investigators, and medical staff, completed "a joint response at the hospital" concluding that E.H.'s injuries were caused by abuse. (*Id.* ¶ 52). Following E.H.'s discharge from her initial hospital visit, on June 3, 2021, Hanks caused the temporary safety plan to be initiated while an investigation proceeded. (*Id.* ¶¶ 57–60). Hanks' investigation did not reveal any other signs of abuse, and individuals familiar with the family did not have any concerns. (*Id.* ¶¶ 60–62). On June 15, 2021, Hanks filed an Emergency Shelter Petition and removed E.H. and K.H. from their home before the state court granted the order approving their removal. (*Id.* ¶ 63). Despite lacking corroborating evidence besides the hospital staff's conclusions, Hanks indicated to the state court that K.H. faced imminent harm. (*Id.* ¶¶ 65–68). On June 16, 2021, Pena filed a Dependency Petition as to both children. (*Id.* ¶ 69). Five days later, on June 21, 2021, Hanks filed another petition that was denied. (*Id.* ¶¶ 75, 79, 81). This did not end the proceedings.

Weeks later, E.H. was again admitted to the hospital in serious condition and put on life support, at which time, Pena removed K.H. from parental custody and placed him with his grandparents before obtaining a court order. (*Id.* ¶¶ 88). Pena based this decision on the fact that the Parents had violated the safety plan by checking on E.H. without supervision, despite that the Parents said this was due to an immediate medical concern regarding the infant's vomiting and breathing. (*Id.* ¶¶

88–89). Separately, the Parents allege that Hanks removed K.H. from his home without a court order on June 15, 2021. (*Id.* ¶ 183).

Following E.H.'s death, on August 3, 2021, Pena filed a notice of termination of parental rights ("Termination Petition") as to both children. (*Id.* ¶¶ 96). K.H.'s dependency proceedings lasted approximately six months as to Stephanie Hogrefe (as her case was voluntarily dismissed) and eleven months as to Paul Hogrefe, concluding in May 2022 when a directed verdict was entered in his favor. (*Id.* ¶¶ 111–112). During this time, the Parents allege that they were deprived of the care, custody, and companionship of K.H. (*Id.* ¶ 225). Paul Hogrefe was not permitted to live at his family home during this time either. (*Id.* ¶ 128).

## II. Defendant Hanks' alleged lies and omissions

In her June 21, 2021 petition seeking dependency as to K.H., which was prior to E.H.'s death, Hanks stated that Paul Hogrefe was "violent, impulsive, or acting dangerously in ways that seriously harmed the children and / or will seriously harm the children" and that E.H. has been physically abused, despite that there was no evidence to support this assertion. (*Id.* ¶¶ 76–78, 175). However, the Parents allege that Hanks ignored and failed to consider community witness statements and other evidence that the Parents' children were not in imminent danger at home. (*Id.* ¶ 161). Eleven months later, Hanks admitted there was no factual basis to remove K.H. (*Id.* ¶ 165).

### III. Defendant Pena's alleged lies and omissions

The Parents also maintain that Pena requested K.H.'s dependency despite confirming that she was not aware of harm to K.H., the Parents were cooperating with their safety plan, all witnesses to the family were positive, and the medical evidence was not conclusive as to the cause of E.H.'s injuries. (*Id.* ¶¶ 70, 205). Additionally, in the Termination Petition, instead of stating the truth that DCF was unsure of the cause of E.H.'s death, Pena stated that the Parents "brutally murdered their three-month old infant," emphasizing a second time that Paul Hogrefe murdered the infant, and that the Parents have not shown the ability to care for K.H. (*Id.* ¶¶ 97–99, 213–214). The Parents allege that Pena knew these statements were false, and that at the final hearing regarding the dependency, Pena admitted that she did not have any evidence supporting these statements and that she had not personally observed any behavior that would support them. (*Id.* ¶¶ 101–105, 222)

## LEGAL STANDARD

For purposes of deciding a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Court accepts as true the factual allegations in the complaint and draws all reasonable inferences in the light most favorable to the plaintiff. *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010). "Generally, under the Federal Rules of Civil Procedure, a complaint need only contain 'a short and plain statement of the claim showing that the pleader is entitled

to relief.'" *Id*. (quoting Fed. R. Civ. P. 8(a)(2)). However, the plaintiff's complaint must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Specific facts that are not necessary to state a claim for relief do not need to be included in a complaint. *Id.* Legal conclusions or a recitation of the elements of a cause of action are insufficient to satisfy a plaintiff's burden to prove he is entitled to relief. *Id.* at 555. A facially plausible claim must plead facts that give rise to a reasonable inference that a defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Thus, the Court is not required to accept as true a legal conclusion merely because it is labeled a "factual allegation" in the complaint; it must also meet the threshold inquiry of facial plausibility. *Id*.

## DISCUSSION

### I. Fourth and Fourteenth Amendment Claims

According to the Complaint, Hanks testified that Paul Hogrefe was violent and dangerous when there was no supporting evidence for this assertion, and that she admitted she had no evidence of violence. Additionally, Plaintiffs allege that Hanks did not include exculpatory statements in the dependency petition and other filings with the Court. Similarly, Plaintiffs have alleged that Pena stated that Paul Hogrefe was violent when he was not, that the children were in danger when there

was no evidence of harm to K.H., and that the Parents brutally murdered their infant daughter, when there was also no evidence of this either. The Court must accept as true at this stage that Hanks and Pena included in their affidavits information that they knew to be false and that was material to the removal of K.H. from the family home for a temporary period, and the imposition of the safety plan altering their control and custody of K.H. that also required Paul Hogrefe to vacate the family home for a temporary period.

Turning first to Count I, K.H.'s Fourth amendment claim for unreasonable seizure. The Fourth Amendment, as applied to the states by way of the Fourteenth Amendment, protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." *Florence-Salmon v. Parker*, No. 3:12-cv-393, 2013 WL 5313309, at *6 (N.D. Fla. Sept. 23, 2013). "The Fourth Amendment's protection 'unquestionably extends beyond criminal investigations to civil and administrative contexts.'" *Id*. The Complaint alleges that K.H. was seized prior to court orders and without probable cause because there was no evidence of harm or danger to K.H. despite Hanks' improper representations of abuse. K.H. alleges a constitutional violation, and Hanks and Pena do not address these seizures in the Motion. Accordingly, Count 1 will not be dismissed.

Counts 2 and 3 are the Parents' claims against Hanks and Pena, respectively, for the false and fabricated statements regarding Paul Hogrefe's violence, the

Parents' murder of their infant daughter, and the intentional omissions of exculpatory information from the Termination Petition. Though the claims are brought under the Fourth Amendment, they may more properly be construed as claims brought under the Fourteenth Amendment, as explained below. The Parents will need to clarify at the summary judgment stage,[2] but the Court finds that the facts as alleged satisfy either claim.[3]

In *Crider v. Williams*, the Eleventh Circuit reversed the district court's grant of qualified immunity at the dismissal stage to a social worker who lied to the state courts in order to obtain jurisdiction over a minor child to have that child removed from the parents' home. No. 21-13797, 2022 WL 3867541, at *3 (11th Cir. Aug. 30,

---

[2] The Fourteenth Amendment protection includes both procedural due process and substantive due process. *Ross v. State of Ala.*, 15 F. Supp. 2d 1173, 1184 (M.D. Ala. 1998). There is a different analysis for substantive due process claims than for procedural ones, and the parties will need to further clarify this at the summary judgment stage. "[A] procedural due process claim involves a two-part analysis: First, we determine whether the defendants deprived the plaintiff of a protected liberty or property interest, and if so, then we assess what process was due." *Brokaw v. Mercer Cnty.*, 235 F.3d 1000, 1020 (7th Cir. 2000). Additionally, "[s]ubstantive due process is a doctrine that has been kept under tight reins, reserved for extraordinary circumstances." *Rose v. Harris*, No. 24-cv-81247, 2025 WL 1880311, at *9 (S.D. Fla. July 8, 2025). A substantive due process violation occurs when (1) there has been a deprivation of a constitutionally protected interest and (2) the deprivation was the result of an abuse of governmental power sufficient to raise an ordinary tort to the stature of a constitutional violation." *Id.* "[C]onduct by a government actor will rise to the level of a substantive due process violation if the act can be characterized as arbitrary or conscience shocking in a constitutional sense." *Id.*

[3] Recognizing that even though a plaintiff "did not explicitly plead a Fourth Amendment claim," where the "allegations can reasonably be read as pleading" such a § 1983 claim, it was not error for the court to construe the claim as such. *Crider v. Williams*, No. 21-13797, 2022 WL 3867541, at *3 (11th Cir. Aug. 30, 2022). Here, there have been several amendments already and the factual allegations are sufficient to support either claim, so the Court will permit the case to proceed.

2022).[4] In *Crider*, the Court found that the parents had successfully pled both a Fourteenth Amendment procedural due process claim and a Fourth Amendment claim for malicious prosecution. *Id*.

"The Fourteenth Amendment of the United States Constitution protects against deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' without the due process of law." *Maddox v. Stephens*, 727 F.3d 1109, 1118 (11th Cir. 2013). The Court found that the parents had alleged constitutional violations based on the social worker's submission of false and fabricated testimony to the state courts in order to remove a child from its parents, which constitutes an interference with the parents' rights without due process, in violation of the Fourteenth Amendment. *Crider*, 2022 WL 3867541, at *6. "Due process of law may be lacking when proceedings are based on false statements." *Id.* (citing *Johnston v. Borders*, 36 F.4th 1254, 1272 (11th Cir. 2022) (concluding that employee's allegations that she was fired because of false statements about her could state a procedural-due-process claim) and *Brown v. Wainwright*, 785 F.2d 1457, 1458 (11th Cir. 1986) (finding a procedural-due-process violation when prosecutor knowingly allowed false testimony at trial and relied on it in closing argument)).

---

[4] Unpublished opinions of the Eleventh Circuit constitute persuasive, and not binding, authority. *See* 11th Cir. R. 36–2. However, given that this case is both factually and procedurally similar and relies on published decisions, the Court finds it persuasive.

The *Crider* Court also found that these same allegations may state a Fourth Amendment claim similar to that alleged by the Parents here, but did not ultimately decide whether this claim is more properly brought by the child than the parents.[5] *Id*. After the *Crider* interlocutory appeal, at summary judgment, the parents instead proceeded under the Fourteenth Amendment. *See Crider v. Williams*, No. 2:20-cv-01518-SGC, 2025 WL 967164, at *13 (N.D. Ala. Mar. 31, 2025) (noting that at summary judgment, the parents focused on Fourteenth Amendment and reasoning that the Eleventh Circuit recognized that lying to a court to obtain custody of a child more properly "implicates a procedural due process violation."). Nonetheless, the Eleventh Circuit recognized that "there is a right under the Fourth Amendment to be free from an unreasonable seizure as a result of a malicious prosecution." *Crider*, 2022 WL 3867541, at *6 (citing *Williams v. Aguirre*, 965 F.3d 1147, 1157 (11th Cir. 2020)) (internal quotations omitted). This claim ultimately requires proof of "both 'a violation of [their] Fourth Amendment right to be free of unreasonable seizures' and 'the elements of the common law tort of malicious prosecution.'" *Id*.

Here, Defendants do not attack the Parents' standing to bring the Fourth Amendment claim, and the substance of the Parents' claims also satisfy the required allegations for a Fourteenth Amendment due process claim. Plaintiffs should be

[5] Acknowledging, in dicta that "the Fourth Amendment claim may ultimately belong to the Child and not the Parents" but nonetheless permitting the alleged claim to proceed. *Crider*, 2022 WL 3867541, at *10.

prepared to address these issues at summary judgment. Having found that Plaintiffs have stated claims for various constitutional violations, the Court will turn to qualified immunity.

## II. Qualified Immunity

### a. Qualified Immunity Standard

To state a cause of action under 42 U.S.C. § 1983, a plaintiff must allege that (1) the defendant deprived him of rights protected by the Constitution or a federal statute and (2) acted under color of state law. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *Myers v. Bowman*, 713 F.3d 1319, 1329 (11th Cir. 2013).

"Qualified immunity is intended to protect government officials performing discretionary functions from the burdens of civil trials and from liability." *Weaver v. Ellsperman*, No. 5:13-cv-108, 2014 WL 12521453, at *2 (M.D. Fla. Feb. 18, 2014), *aff'd*, 589 F. App'x 481 (11th Cir. 2014). "Qualified immunity shields "all but the plainly incompetent or those who knowingly violate the law." *Swinford*, 2022 WL 987992, at *5. Once an official argues entitlement to qualified immunity, "the plaintiff must prove that an official's conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Weaver*, 2014 WL 12521453, at *2. A two-part test is applicable: the court must first "determine whether the plaintiff's allegations, if true, establish a constitutional violation." *Id*. (citing *Brown*., 608 F.3d at 734). Next, the plaintiff must show that

the violated right was "clearly established at the time of the violation." *Id*. The Court may consider this inquiry in either order. *Id*. Accordingly, the burden of proof "shifts to the plaintiff to establish that qualified immunity is not appropriate" once the defendant proves that he was acting within the scope of his discretionary authority when the allegedly wrongful act took place. *Bates v. Harvey*, 518 F.3d 1233, 1242 (11th Cir. 2008).

**b. Qualified Immunity Analysis**

The Court has already determined that Defendants Hanks and Pena were acting within their discretionary authority. (Doc. 68 at 13). The burden shifts to Plaintiffs to prove a constitutional violation of a clearly established right. As outlined above, the Complaint alleges constitutional violations of the Fourth and Fourteenth Amendments.

Turning to the clearly established prong, a plaintiff must show any one of the following "(1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law." *Maddox v. Stephens*, 727 F.3d 1109, 1121 (11th Cir. 2013).

In *Crider*, the Court found that making false and fabricated statements to the state court in the course of dependency proceedings to cause the removal of a child from his or her parents is clearly established constitutional violation:

> We hold that the constitutional violations, both under the Fourth and Fourteenth Amendments, were clearly established. Even though we have not decided a case with facts identical to these, a "broader, clearly established principle ... control[s] the novel facts of [each] particular situation." *Corbitt*, 929 F.3d at 1312. That relevant "broader, clearly established principle," *id.*, is that making material false statements to a court, which, by definition, are necessary to obtain process to remove a child from his parents, violates due process, and engaging in that same conduct to obtain process to seize someone violates the right to be free from unreasonable seizures and establishes the underlying federal component of a claim of the right to be free from malicious prosecution.

*Crider*, 2022 WL 3867541, at *8.

It is also clearly established that "there can be no 'fundamentally fair procedure' when the procedure is based on false statements." *Id.* at *9. Given the existence of *Crider* and the published decisions on which it relies, the Court finds that qualified immunity cannot be granted at this stage, where Plaintiffs' allegations regarding fabrication of evidence must be accepted as true. The Court will revisit the issue at the summary judgment stage.

Defendants' other arguments are not capable of resolution at the dismissal stage or lack legal support. Defendants also do not address or attempt to distinguish *Crider*. First, Defendants claim that Plaintiffs' case repeatedly relies on hindsight because it requires second-guessing the evidence and conclusions reached during the

course of the investigation and additional facts that only later came to light. This argument is not appropriate at the motion to dismiss stage because it requires consideration of facts and conclusions not alleged in the Complaint or ones that would conflict with the Complaint. Similarly, whether Hanks and Pena appropriately considered alternative investigations and weighed evidence is not proper at this stage either, to the extent it would require disputing Plaintiffs' allegations. These arguments may have merit at a later stage.

Additionally, the causation issue is not well-suited for this stage where Plaintiffs have properly alleged specific conduct of each Defendant and the resulting damages. The Complaint as alleged does not request the Court to revisit the dependency proceedings themselves because it alleges that the underlying proceedings were based on fabricated and false statements, not that the court's decisions were wrong. To the contrary, the Complaint alleges that Defendants presented false and fabricated testimony to the state court and omitted material, exculpatory information. As outlined above, those facts state a violation of clearly established rights under §1983. Moreover, the cases Defendants rely on to argue that they should have witness testimony immunity are not factually similar because they involve mere witness testimony in grand jury and other proceedings, not an officer's fabricated testimony to the state court during child dependency proceedings later forming the basis of a § 1983 action. As stated above, and at this early stage, the

Court finds that *Crider* and the published opinions cited therein govern. The motion will be denied.

Based on the foregoing, it is ordered as follows:

1. Defendants Amy Hanks and Stephane Pena's Motion to Dismiss Plaintiffs' Second Amended Complaint (Doc. 72), is **DENIED**.

2. Defendants **SHALL FILE** an answer to the Second Amended Complaint within 14 days.

3. Having concluded that the omission of K.H. as plaintiff was in error, the Clerk is **DIRECTED** to add K.H., a minor, as a Plaintiff in the case style and CM/ECF system.

**DONE** and **ORDERED** in Chambers, in Orlando, Florida on October 21, 2026.

/s/ Anne C. Conway
Anne C. Conway
United States District Judge

Copies furnished to:

Counsel of Record